Quynh Trinh, CA Bar No. 201571
**Corvus Law Group, LLC**
36196 Kiote Drive
Newark, CA 94560
Phone: (888) 315-4735
Facsimile: (888) 316-0929
quynh@corvuslaw.com

Attorneys for Plaintiffs

E-FILING

FILED
DEC 1 4 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ADR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JIM B. KIMBALL,

    Plaintiff,

vs.

BAC HOME LOAN SERVICING, LP, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

    Defendant.

CASE NO.: CV 10-05670 HRL

FIRST AMENDED COMPLAINT FOR
1. **DECLARATORY RELIEF;**
2. **QUIET TITLE;**
3. **ACCOUNTING;**
4. **REFUND FEES & COSTS.**

**DEMAND FOR JURY TRIAL**

Plaintiff, Jim B. Kimball ("Kimball" or "Plaintiff"), by and through counsel, Corvus Law Group, LLC, complains of Defendants, and for cause of action alleges as follows:

**STATEMENT OF THE CASE**

Plaintiff, Jim Kimball, bring this action in order to prevent the improper taking of his property by false pretenses. Kimball seeks further redress for the Defendants' failure and willful refusal to provide him with information concerning his mortgage including a full accounting of the significant monies he has paid towards their mortgage. American Wholesale Lender appears on the Note and Trust Deed as the Kimball's lender, but it now disclaims this status. BAC Home Loans claims to be servicing the note on behalf of an unnamed note holder, yet it has failed to produce any evidence, despite repeated requests, of who the true note holder's identity.

COMPLAINT

Defendants must not be allowed to take Kimball's money and fail to account for it, obfuscate the identity of the true note holders, and to otherwise interfere with his interests, nor should the defendants be allowed to double or triple recovery at Kimball's expense all while leaving him exposed to multiple liability for the same negotiable instrument.

**PARTIES, JURISDICTION, VENUE**

1. Plaintiff Jim B. Kimball is a citizen of California, whose address is 1720 Grace Avenue, San Jose, California 95125.

2. Defendant, Bank of America Home Loans (hereinafter "Bank of America") is a Delaware corporation, with its principal place of business in Charlotte, North Carolina and at all times relevant herein was doing business in the State of California.

3. Defendant Mortgage Electronic Registration Systems hereafter "MERS" is a Delaware corporation with its principal place of business in Virginia and its corporate offices located at 1818 Library Street, Suite 300, Reston, Virginia 20190, and at all time relevant herein was doing business in the State of California. Defendant MERS purports to be the original first position beneficiary of the Trust Deed.

4. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, California Code Civ. Proc. § 1060 et seq. (declaratory judgment) and California Code Civ. Proc. §760.020 (quiet title) and 28 U.S.C. § 1332(a). This Court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. One or more parties to this action are national associations or institutions federally regulated under 12 U.S.C. §§ 2601 et seq. (RESPA) and 15 U.S.C. §§ 1601 et seq. (TILA).

7. Venue is proper in the United States Court for the Central District of California, pursuant to 28 U.S.C. § 1391(c).

## SECURITIZATION CASES

8. This is an action respecting a "securitized" loan - one in which the debt is pooled with similar debts and sold as "mortgage backed securities" ("MBS"). The debt is evidenced by a Note, and secured by a Trust Deed. The general process of securitization is described below.

9. Securitization reflects a process, not generally recorded or readily apparent, having a significantly different form and purpose from the traditional mortgage loan. What begins as, and may give the appearance of, an ordinary mortgage loan, is, in fact, an investment scheme. Application of well-established principles of law to such a scheme fundamentally alters the rights of the parties in the subject realty. This results from the fact that persons asserting the status and rights of lenders actually make no loans, or loan only temporarily. They promptly transfer their rights to undisclosed persons, who participate with the intent of recovering from a collateral source when anticipated default occurs. Securitization schemes always involve providing investors rights to recoup profitably from a collateral source. The scheme is completed by rewarding the purported lenders with opportunity to foreclose debts they do not own, and retain the proceeds as fees for providing the investors opportunity to recoup profitably from a collateral source.

10. This action raises the issues whether, in the enforcement of established legal principles, purported lenders can obtain from such investors a right to collect debts owned by the investors, and whether such investors may retain an interest in the subject realty if they do not assert it, but choose instead recoupment from the collateral source.

11. The purpose of this action is to determine who is entitled to the subject realty. This is not for the purpose of determining the validity of the debt.

12. In all securitization cases, there are three potential claimants to the subject realty:

   (1) the borrower-purchaser of the realty;
   (2) the purported lender (its successors and agents), who actually made no loan, and has sold its interest in the mortgage/trust deed;
   (3) the investors in securities backed by the mortgage/trust deed, who actually funded any loan, and have any right to collect the debt.

13. Plaintiff here is the borrower/purchaser. Defendants are the purported lender, its successors and assigns. The investors, whose identities have been withheld, may be named as John Does.

14. It can be determined preliminarily that the purported lender is not entitled to the realty. Commonly, it parted with no money, and is entitled to collect none. The loan was funded in almost all cases, by a warehouse lender, which received the funds from, or was reimbursed them by, investors in the MBS. When the lender transferred the loan to a securitization pool, it transferred, and lost any interest in the mortgage or trust deed.

15. Lacking such an interest, the lender cannot foreclose in its own right. Only the owners of the debt, the investors in MBS, may be able to do so. This is unaffected by the fact that the lender, under a Pooling and Securitization Agreement, may have

COMPLAINT

possession of the Note as a "custodian" for the investors in MBS. Such possession is not the possession required to be a holder in due course authorized to enforce the Note.

16. The first stage of the present litigation is a declaratory judgment action to determine, and terminate, through a quiet title action, any claims of the purported lender to the realty. The position of the purported lender in these matters is essentially fraudulent. It is an attempt to obtain realty on which it has loaned nothing, in purported collection of a debt it is not owed. It is literally an attempt to obtain free realty.

17. The second stage of the litigation follows a declaratory judgment with a classic quiet title action to determine right to the realty as between the borrower/purchaser and the investors in MBS. Because of the jurisdictional difficulties in joining John Does in a federal diversity action, the second stage may need to be filed in State Court.

18. While California law permits such investors to record their interests, ordinarily, they do not. This means that their identity is unknown to the borrower/purchaser. Further, while the borrower/purchaser in this case, having a right to do so, demanded the identities of such investors, no information has been provided. In quiet title, however, potential claimants may be served by publication, in order to obtain a binding decree.

19. Absent a quiet title action, title to the realty may remain clouded and unmarketable indefinitely. A quiet title action requires the investors to come forward now, upon peril of losing any claim which may not have been previously discharged.

20. Absent a positive finding that the debt has been discharged, by, for example, default insurance in some form, a quiet title decree will not affect validity of the debt, only of the security.

**THE LENDER CANNOT BE A HOLDER IN DUE COURSE OF THE NOTE**

21. In the ordinary course of securitization, Notes evidencing the pooled debts are gathered and lodged in a repository, in the possession of a "custodian" who acts for the investors, and has no right or interest of his own. At the same time, the lender gives purchasers of MBS "certificates" certifying their ownership of the "loans" and their right to obtain the payments due under the Notes. Frequently, the "custodian" appointed by the securitizers is the original lender.

22. Since investors in MBS do not sign the Pooling and Servicing Agreement, under the typical Statute of Frauds, such agreements do not bind the interest of the investors in the mortgage/trust deed. Further, the "custodian" appointed by the securitizers cannot be a "holder in due course" of the Notes. This means that the custodian has no authority to foreclose.

23. A Note is a negotiable instrument under the Commercial Code. The Code defines who is, or is not, a "holder" of a Note, and who is, or is not, entitled to enforce it.

24. Negotiation of an instrument equates to a "transfer of possession." "Transfer" is defined as "for the purpose of giving the person receiving delivery the right to enforce the instrument."

25. A "person entitled to enforce" an instrument includes a non-holder in possession who has the rights of a holder, or the person who is entitled to possession. A "custodian" is not, and does not have the rights of, a holder; the person entitled to possession is the person on whose behalf the custodian has possession, the investors in MBS.

26. A "holder in due course" is defined as one to whom the instrument is "negotiated," and who takes it for value and in good faith. Notes are not "negotiated" - transferred with intent to confer the power to enforce - to custodians, who do not take for value, and who, in good faith, have the instrument only for safe keeping.

-6-

COMPLAINT

27. A non-holder is subject at any time to rescission of delivery, and re-possession by the owner.

28. To demonstrate a right to foreclose, it is not sufficient for the lender merely to have possession of the Note. If the loan has been securitized, the possessor of the Note is presumptively a custodian. If the lender has possession of the Note merely as a custodian for investors, the lender may not foreclose without demonstrating an express agency to do so on behalf of the investors.

29. A Pooling and Servicing Agreement unsigned by investors in MBS is not an express agency because it does not satisfy the Statute of Frauds.

### A POOL TRUST IS NOT AN AGENT FOR INVESTORS

30. Typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee. Loans are sold to the trust, and the debts accumulated in a trust "pool." This appears to follow the classic pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary. However, transfer to the trust is intended as a true sale for tax purposes, not a transfer in trust, and there is no beneficiary. The "trust" is simply a vehicle for "pooling" of the debts, and sale of the assets to others, the investors in the MBS. The investors give value, and receive "certificates," which certify their ownership of the debt. Such certificates may be regarded as replacement of the Notes. This is not a beneficial interest: it is expressly ownership. The trust is emptied of assets, and the trustee thereafter typically performs no functions. The securitizers appoint "servicers" for the loans, but such appointment does not bind the investors.

-7-

COMPLAINT

31. Pooling and Servicing Agreements are entered into by the securitizers, not including the investors in MBS. Certificates are executed by the "trustee" and the original lenders.

32. Transfer of the beneficial interest in a trust deed by operation of law confers upon the investors in MBS authority to declare a default and authorize foreclosure. These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary. Nor, if challenged, can such authorization be presumed. While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, or has obtained instruction from them. Thus, "servicers" are not a "real party in interest" unless they can show their agency to act for the investors.

33. This action, therefore, requires a declaration that the purported lender, its successors and assigns, have no right to foreclose on their own behalf, requires them to demonstrate any right they claim to foreclose as agents of the investors in MBS, and, failing such demonstration, requires investors to come forward to assert their interest, or to have the title quieted against them, leaving only a personal obligation.

### BACKGROUND FACTS

34. Plaintiff purchased for value and is the owner of the property located at 1720 Grace Avenue, San Jose, California 95125 in Santa Clara County (hereinafter "the subject property"), under a grant deed thereto recorded on August 4, 2005, Entry #18508184 in the Santa Clara County Recorder's Office.

35. On or about July 14, 2005, Plaintiff executed the Promissory Note (hereinafter "the Note") in favor of America's Wholesale Lender (hereinafter "Lender"). Defendant

-8-

COMPLAINT

Bank of America purports to now be the successor in interest thereof. On information and belief the original of said Note was then retained by Lender.

36. On or about July 14, 2005, Plaintiff made and delivered the Deed of Trust (hereinafter "the Trust Deed") conveying the subject property in trust for the purposes recited therein to CTC Foreclosure Services Corporation as Trustee. Said Trust Deed was thereafter recorded in the Santa Clara Recorder's Office.

37. On or about July 14, 2005, Plaintiff executed a second Promissory Note in favor of America's Wholesale. Defendant Bank of America purports to now be the successor in interest thereof. On information and belief the original of said Note was then retained by Lender.

38. On or about July 14, 2005, Plaintiff made and delivered a second Deed of Trust conveying the subject property in trust for the purposes recited therein to CTC Foreclosure Services Corporation as Trustee. Said Trust Deed was thereafter recorded in the Santa Clara Recorder's Office.

39. Said first and second position Trust Deeds name as Beneficiary of said Trust Deed MERS acting solely as nominee for Lender and Lender's successors and assigns, and the successors and assigns of MERS.

40. MERS is a private corporation that administers the MERS system, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS system, MERS purports to become the mortgagee of record for participating members through assignment of the members interests to MERS. The lenders initially retain the loan obligations as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors.

COMPLAINT

41. The first position Trust Deed recites that the beneficiary of this security instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS and

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

42. A Servicer was designated as Bank of America for the loan ("Servicer" or "Servicers") to act as their representative/agent for the holders of the respective Note and the corresponding Trust Deed.

43. Upon information and belief, Lender in the foregoing transaction was provided a line of credit by undisclosed warehouse lenders, pending pooling of the Note with other such instruments, and sale of the pooled instruments as securities to unknown investors.

44. Upon information and belief, the Lender has been reimbursed all sums advanced by each of them in connection with the Note.

45. Upon information and belief, the Lender's function was limited to obtaining their respective Note, in exchange for a fee, as a preliminary step to "securitization" of debt as described herein.

46. Upon information and belief, the debt was pooled with similar debts pursuant to a Pooling and Servicing Agreement between multiple lenders and Servicer in which Servicer purported to act as Trustee of a Trust created hereby, for the purpose of selling such debts as securities to investors, and appointing "servicers" of the pooled loans, and

as a custodian of the note evidencing the debt and sold by Lenders and/or a person or persons unknown as securities to numerous investors unknown.

47. Upon information and belief, such investors and/or the person or persons unknown who sold such securities have obtained insurance against default on the underlying obligations in the form of "credit default swaps" or other credit enhancements.

48. The cost of such credit default swap or other credit enhancement was, as applicable to the subject loan, charged to borrower.

49. Notwithstanding the transfer of the debt as herein described, no transferee thereof has recorded a copy of any security agreement providing any security interest in the Trust Deed or any appropriate affidavits.

50. As a result of the transfer of the Note as part of these securities transactions, and of the lack of recordings, Lenders and defendants are not the present owners of the debts under the respective Note or the obligees thereon. Named defendants, or one of them, are a mere custodian of the Note for others. Plaintiff, and, upon information and belief, defendants, do not know who is or are the present owners of the respect debts evidenced by the Note, or the obligees thereon.

51. Named Defendants or one of them is a mere custodian of the Note for others.

52. Upon information and belief, the Trust Deed was not assigned or transferred of record in whole or in part.

53. Plaintiff having a right under the Note and federal law to do so, demanded of Servicers, who purport to have a relationship in the nature of agency with persons to whom the Note and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees, all information and records showing transfer of such Note

to any person or persons, for the purposes, among others, of determining the proper person(s) to receive payments under the Note, or to negotiate payment or reinstatement of the debt, or to obtain acknowledgment of proper application of payments. No qualified response was provided.

54. Through the conduct descried in this Complaint, Defendants have attempted to collect on a debt to which they are not legally entitled as they have no knowledge of proper payments and credits to the debt, and they are not the proper parties entitled to enforce the Note.

55. The obligations of the Plaintiffs are not owed to the Defendants who are claiming interest. There is no perfected interest as to the true Note Holder.

56. Neither the investors in the mortgage back securities nor any other entity or person who had a right to payment from the Plaintiff or who was a lawful beneficiary with a beneficial interest under the Trust Deed ever declared a default under the Note and Trust Deed and no proper beneficiary under the Trust Deed ever declared a default under the Note and Trust Deed and no proper beneficiary under the Trust Deed ever directed or will ever direct a sale of the property owned by Plaintiff in which MERS is named as beneficiary or nominee of the beneficiary/lender at issue in this action.

**FIRST CAUSE OF ACTION: ESTOPPEL/ DECLARATORY JUDGMENT**

57. Plaintiff incorporates herein by reference paragraphs all hereinabove.

58. The Servicers of the respective Note purport in the Trust Deed to have a relationship in the nature of agency with persons to whom the Note and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees.

59. By permitting the respective Servicers to so represent their respective capacities, the Defendants and any assignees have conferred upon each Servicer the right and

obligation to disclose and assert the interests of such assignees as necessary to protect such interests.

60. The refusal of the Servicers, upon demand, to disclose such interests is binding upon their respective assignees.

61. The result of such behavior by Servicers, defendant Beneficiaries, and such assignees, is to subject borrowers and their successors in title, to risks, abuses, and prejudice, and to render impossible proper discharge of the debt.

62. As a result of such behavior, defendant Beneficiaries, and such assignees, including those served by publication herein, are estopped to assert any present default on the debt, or power of sale under the Trust Deed.

63. An actual controversy exists between Plaintiff and defendants regarding the amenability of the subject properties to sale by defendants, which may be resolved by the Court pursuant to 28 U.S.C. § 2201, California *Code* Civ. Proc. § 1060 et seq. (declaratory judgment).

64. The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants, lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject properties.

**SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT**

65. Plaintiff incorporates herein by reference all paragraphs hereinabove.

66. The Bank is not a Trustee of any existing Trust, and Defendants, the Servicers and defendant beneficiaries:

    a. do not know whether a default had occurred, or had been declared by the actual owners of the debts evidenced by the Note;

COMPLAINT

   b. lack authority to declare a default or otherwise pursue collection of the debts evidenced by the Note;

   c. lack authority to sell the subject properties or to distribute any proceeds thereof;

   d. are not entitled to any of such proceeds on their own account;

   e. cannot give trustee's deeds which were free and clear of the debts evidenced by the Note;

   f. cannot give an enforceable release of the Trust Deed.

67. In the event that any investor in the debt evidenced by the Note, or any assignee of an interest in the Note, did not obtain assignment of the Trust Deed, the obligation under the Note, has to that extent, become unsecured, and the Note and Trust Deed, may not be foreclosed.

68. Plaintiff, at any time relevant hereto, by diligent search or otherwise, could not have discovered, without the assistance of Servicers and, consequently, the named defendants, the identities of any assignee of any interest in the Note or Trust Deed, or the present holders(s) of the Note, or the interest of such person as a result of any such assignment. Plaintiff was thereby prevented from properly discharging the debt.

69. An actual controversy exists between Plaintiff and defendants regarding the amenability of the subject properties to sale by defendants, which may be resolved by the Court pursuant to 28 U.S.C. § 2201, California Code Civ. Proc. § 1060 et seq. (declaratory judgment) and Rule 57, F.R.C.P.

70. The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

COMPLAINT

### THIRD CAUSE OF ACTION: QUIET TITLE

71. Plaintiff incorporates herein by reference all paragraphs hereinabove.

72. The transfer of the Note as part of securities, subjects Plaintiff to potential multiple and unpredictable recoveries or attempts to recover, against the subject properties.

73. The failure of Beneficiaries and Trustee to retain any interest in the obligations under the Note voided any title or power they might have under the Trust Deed, and rendered the Trust Deed unenforceable by them.

74. The inability of Plaintiff to safely discharge any lien of the Trust Deed against the subject property in favor of assignees of interests in the Note and Trust Deed, and the threat of multiple recoveries or attempts to recover against the subject properties constitute a cloud on Plaintiff's title which can only be removed by requiring all such assignees to appear and assert their interests and the extent to which any obligation owing to them has not been discharged by payment, including collections on insurance against default, or, failing such assertion of claims, entry of a decree of quiet title freeing the subject properties from the liens of such obligations. The Court, pursuant to California Code Civ. Proc. §760.020 (quiet title), should enter its Order herein forthwith quieting title to the subject properties in Plaintiff and against defendants, freeing title to the subject properties of the liens of the Trust Deed and leaving any obligations under the Note unsecured by any interest in the subject property.

### FOURTH CAUSE OF ACTION: REFUND, FEES AND COSTS

75. Plaintiff incorporates herein by reference all paragraphs hereinabove.

76. The Trust Deed has been unenforceable by defendant Beneficiaries and Trustee from the first transfer of the Note as set out hereinabove.

-15-

COMPLAINT

77. Defendant Beneficiaries' and Trustee's pretenses of authority to foreclose, or attempt to foreclose, under the Trust Deed were fraudulent.

78. Defendant Beneficiaries' assertions to the Court herein that it holds and is entitled to enforce the obligations of the Note would constitute a fraud upon the Court, subjecting defendants to sanctions and imposition of fees and costs under California Code of Civil Procedure § 1021 et seq.

79. The Court should enter its Order herein forthwith to Defendant Beneficiaries, jointly and severally, to pay to Plaintiff its fees and costs, together with a reasonable attorney's fee, to be shown by affidavit, and to reimburse to Plaintiff unnecessary fees and charges under the Note and the Trust Deed.

WHEREFORE, Plaintiff pray that the Court enter its Order herein:

1. Declaring that Defendant Beneficiaries lack any interest in the subject properties which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the subject properties; and

2. Declaring that the Trust Deed are not liens against the subject properties, ordering the immediate release of the Trust Deed of record, and quieting title to the subject properties in Plaintiff against defendants and all claiming by, through, or under them;

3. Refunding to Plaintiff from Defendant Beneficiaries, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiff costs of the action, including reasonable attorney's fees; and

1  4. For such other and further relief as the court deems just in the premises.

2  DATED: November 22, 2010

By: *(signature)*
QUYNH TRINH
Attorney for Plaintiff

-17-

COMPLAINT