Quynh Trinh, CA Bar No. 201571
**Corvus Law Group, LLC**
36196 Kiote Drive
Newark, CA 94560
Phone: (888) 315-4735
Facsimile: (888) 316-0929
quynh@corvuslaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIM B. KIMBALL,<br><br>                    Plaintiff,<br><br>        vs.<br><br>AMERICA'S WHOLESALE LENDER;<br>COUNTRYWIDE HOME LOANS, INC.;<br>BAC HOME LOAN SERVICING, LP; and<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.; and<br>DOES 1-10,<br><br>                    Defendants. | CASE NO.:  5:10-cv-05670<br><br>**FIRST AMENDED COMPLAINT**<br>(JURY DEMAND)<br><br>**Hon. LHK** |

Plaintiff Jim B. Kimball, (hereinafter referred to as "Plaintiff" or "Kimball") by and through his counsel of record, Quynh Trinh, Corvus Law Group, LLC, make and file this First Amended Complaint for permanent injunctive relief and damages against America's Wholesale Lender, Inc. ("America's"), Countrywide Home Loans, Inc. ("Countrywide"), BAC Home Loans Servicing, LP ("BAC"), Mortgage Electronic Registration System ("MERS"); and DOES 1-10 (collectively "Defendants").  In support of this Complaint, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1.      Plaintiff brings this action in order to prevent the improper taking and/or foreclosure of his family home by defendants who no longer own the debt secured by the

Plaintiff's home.  The Plaintiff also alleges that BAC intentionally and negligently misled him into believing that he would be able to modify his mortgage and has suffered damages as a result.  The Plaintiff further alleges claims for promissory estoppel, breach of the covenant of good faith and fair dealing, and quiet title against entities (and possibly individuals) that have assigned away any right or interest they may have held in the Plaintiff's property at some time.

      2.    America's Wholesale Lender and/or Countrywide Home Loans, Inc. appears on a Promissory Note (the "First Note," as described more specifically below) and Deed of Trust ("First Trust Deed," as described more specifically below) as the Plaintiff's lender, but it now disclaims this status.  BAC claims to be servicing the Note on behalf of an unnamed holder of the Note, yet it has failed to produce any evidence, despite repeated requests, of the true Note holder's identity.  Significantly, Santa Clara County records show no evidence of the purported assignments of the First Trust Deed from America's Wholesale Lender and/or Countrywide.

      3.    America's Wholesale Lender and/or Countrywide Home Loans, Inc. appears on a Promissory Note (the "Second Note," as described more specifically below) and Deed of Trust ("Second Trust Deed," as described more specifically below) as the Plaintiff's lender, but it now disclaims this status.  BAC claims to be servicing the Note on behalf of an unnamed holder of the Note, yet it has failed to produce any evidence, despite repeated requests, of the true Note holder's identity.  Significantly, Santa Clara County records show no evidence of the purported assignments of the Second Trust Deed from America's Wholesale Lender and/or Countrywide.

      4.    Upon information and belief, as described more fully below, it appears that America's Wholesale Lender and/or Countrywide sold or pooled the Plaintiff's notes

into a mortgage-backed security or another type of security instrument, which was then sold to third-party investors.

5.     This action, therefore, seeks to establish who "owns the debt" secured by the Plaintiff's First Trust Deed and Second Trust Deed and who has the right to notice a default and foreclose.  As alleged below, the Plaintiff seeks a declaration that: (a) Defendants have no right to foreclose on their own behalf; (b) Defendants are required to demonstrate any right they claim to foreclose as agents of the investors in mortgage-backed securities or other types of security instruments that are secured by the Plaintiff's First Trust Deed and Second Trust Deed and; (c) failing such demonstration by Defendants, a declaration that requires the third-party investors to come forward to assert their interest and ownership in the First Note and Second Note and their accompanying right to declare default and foreclose, or to have the title quieted against them, leaving only a personal obligation.

**THE PARTIES**

6.     Plaintiff, Jim B. Kimball, is an individual and an actual citizen of California whose address is 1720 Grace Avenue, San Jose, California 95125.

7.     Defendant Lender America's Wholesale Lender Lending Services (hereinafter "America's Wholesale Lender") is a New York corporation with its principle place of business in Van Nuys, California, and at all times relevant herein was conducting business in California.

8.     Defendant Countrywide Home Loans, Inc., (hereinafter "Countrywide") is a New York Corporation with it's principal place of business in California, and at all times relevant herein was doing business in California.

-3-

9.      Defendant BAC Home Loans Servicing, LP ("BAC") is a California corporation with its principle place of business in Simi Valley, California, and at all time relevant herein was conducting business in California.

10.     Defendant, Mortgage Electronic Registration System ("MERS") is a Virginia company, with its principal place of business in Reston, Virginia and at all times relevant herein was doing business in the State of California.

11.     Plaintiff here is the borrower/purchaser.  Defendants are the purported lender, its successors and assigns.  The investors, whose identities have been withheld by the Defendants, or unknown successors in interest, or currently unknown entities who claim interest in the property, are named as the Doe 1-10 defendants.

12.     Plaintiff is unaware of the true names and capacities of Defendant Does 1 through 10, inclusive, and therefore sues these defendants by fictitious names.  Plaintiff is informed and believes, and on that basis, alleges that each of the fictitiously named defendants is in some manner responsible for the damage to Plaintiff as alleged in this Complaint.  Plaintiff will amend this Complaint to show the true names and capacities of these fictitiously named defendants after their true names and capacities have been ascertained.

**JURISDICTION AND VENUE**

13.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

14.     The court has jurisdiction of this action pursuant to 28 USC §2201, California Code of Civil Procedure §1060-1062.5 (declaratory judgment) and California Code of Civil Procedure §761.020-761-.040 (quiet title), and 28 USC §1332 (a). This court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all other

claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in the Central Division of the United States Court for the District of California, pursuant to 28 U.S.C. § 1391(c).

**THE PROBLEMATIC ORIGINATION OF THE LOAN**

16.     Plaintiff purchased for value, and is the owner of, the property commonly known as 1720 Grace Avenue, San Jose, California 95125, in Santa Clara County and legally referred to as LOT 21, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 405 ANNABELLE TRACT", WHICH MAP FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON AUGUST 121 [sic], 1947, IN BOOK 13 OF MAPS, PAGE 43. (hereinafter "the Subject Property") under a deed thereto.

17.     On or about July 14, 2005, Plaintiff executed a Promissory Note (hereinafter the "First Promissory Note") in favor of defendant lender America's Wholesale Lender.  America's Wholesale Lender purports to be the original lender thereof. On information and belief, the original of said Note was then retained by defendant America's Wholesale Lender.

18.     The parties to the Note were designated as the Plaintiff and America's Wholesale Lender.

19.     BAC purports to be the successor in interest of the Note.

20.     On or about July 14, 2005, Plaintiff made and delivered a Deed of Trust (hereinafter the "First Trust Deed"), conveying the Subject Property in trust for the purposes recited therein to CTC Foreclosure Services Corporation as Trustee.  Said Trust

Deed was recorded in the Records of Santa Clara County, California and then returned to Countrywide.

21.    The parties to the Trust Deed, which is a contract of adhesion, were the Plaintiff and Mortgage Electronic Registration System ("solely as nominee for Lender", and as purported "Beneficiary" in boilerplate). The Trust Deed named "America's Wholesale Lender" as the "Lender" but, unbeknownst to the Plaintiff, America's Wholesale Lender did not fund the mortgage and had no intention of funding the mortgage.

22.    Yet, pursuant to the First Trust Deed, only the "Lender" may cause the Trustee to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold.  As discussed below, upon information and belief, funding for the Note was actually provided by investors in mortgage-backed securities, who bought undivided interests in a revenue stream originating from a large pool of mortgages.

23.    In fact, BAC, who claims to be servicing the loan has misrepresented or purposefully withheld the identity of the "Note Holder" as defined under Plaintiff's Promissory Note, and the "Beneficiary" as defined under Plaintiff's First Trust Deed.

24.    BAC has failed to present evidence, upon Plaintiff's numerous pre-litigation written and verbal requests including a letters sent October 28, 2010 and November 12, 2010, regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which BAC did not respond at all.  BAC has consistently obfuscated Plaintiff's numerous requests for basic information (about who owned his Second Note, and who was being paid for it, and in what amounts).

-6-

25.     On or about July 14, 2005, Plaintiff executed a Promissory Note (hereinafter the "Second Promissory Note") in favor of defendant lender America's Wholesale Lender.  America's Wholesale Lender purports to be the original lender thereof. On information and belief, the original of said Note was then retained by defendant America's Wholesale Lender.

26.     The parties to the Note were designated as the Plaintiff and America's Wholesale Lender.

27.     BAC purports to be the successor in interest of the Note.

28.     On or about July 14, 2005, Plaintiff made and delivered a Deed of Trust (hereinafter the "Second Trust Deed"), conveying the Subject Property in trust for the purposes recited therein to CTC Foreclosure Services Corporation Trustee.  Said Trust Deed was recorded in the Records of Santa Clara County, California and returned to Countrywide.

29.     The parties to the Trust Deed, which is a contract of adhesion, were the Plaintiff and Mortgage Electronic Registration System ("solely as nominee for Lender", and as purported "Beneficiary" in boilerplate). The Trust Deed named "America's Wholesale Lender" as the "Lender" but, unbeknownst to the Plaintiff, America's Wholesale Lender did not fund the mortgage and had no intention of funding the mortgage.

30.     Yet, pursuant to the Second Trust Deed, only the "Lender" may cause the Trustee to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold.

31.     As discussed below, upon information and belief, funding for the Second Note was actually provided by investors in mortgage-backed securities, who bought undivided interests in a revenue stream originating from a large pool of mortgages.

32.     In fact, BAC, who claims to be servicing the loan has misrepresented or purposefully withheld the identity of the "Note Holder" as defined under Plaintiff's Promissory Note, and the "Beneficiary" as defined under Plaintiff's Trust Deed.

33.     BAC has failed to present evidence, upon Plaintiff's numerous pre-litigation written and verbal requests regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which BAC did not respond at all.  BAC has consistently obfuscated Plaintiff's numerous requests for basic information (about who owned his Second Note, and who was being paid for it, and in what amounts).

### THE FUNDING AND SECURITIZATION

34.     The Plaintiff's loans were funded by undisclosed warehouse lenders, which received the funds from, or were reimbursed by, investors in securities backed by this mortgage.  When the warehouse lenders transferred the notes to a securitization pool, they transferred, and lost any interest in the First Note or Second Note and First Trust Deed or Second Trust Deed.

35.     On information and belief, America's Wholesale Lender and America's Wholesale Lender tailored the Plaintiff's loans to meet the particular specifications of the ultimate purchaser of the respective notes.

36.     Upon information and belief America's Wholesale Lender's and America's Wholesale Lender's function was limited to obtaining the First Note and Second Note, in exchange for a fee, as a preliminary step to "securitization" of the debt as described above.

37.     Plaintiff's First Note and Second Note were, in fact, securitized and sold to investors in mortgage-backed securities secured by the Subject Property.

38.     Upon information and belief, all Defendants knew of and/or participated in the securitization of the First Note and Second Note.

39.     Because of the securitization of the First Note and Second Note, Plaintiff has been unable to communicate directly with the holder of these notes, which Plaintiff reasonably contemplated to be a material term of his agreement and which was a material term of his agreement.

40.     Because of the securitization of the First Note and Second Note, Plaintiff has been unable to discern the true owner of his notes.

41.     Plaintiff's First Trust Deed and Second Trust Deed and First Note and Second Note were intentionally separated by assignment of the notes during the securitization process without assignment of the related Trust Deed.

42.     Only the owners of the debt (the Note)—the investors in the securities backed by Plaintiff's mortgage—have the right to foreclose on the Note's security (the Subject Property).

43.     Significantly, the investor or investors in the securities backed by Plaintiff's mortgage have not attempted to call a default upon Plaintiff nor have the investors threatened or attempted to foreclose.

44.     Upon information and belief, the Note in question followed the ordinary course of securitization as described below.

**THE ORDINARY COURSE OF SECURITIZATION**

45.     In the ordinary course of securitization, those responsible for amassing the mortgage-backed securities ("MBS"), the securitizers—generally the lenders—gathered

and lodged in a repository massive numbers of notes pursuant to what was styled a "Pooling and Securitization Agreement".

46.    Under the Pooling and Securitization Agreement, these massive numbers of notes were put in the possession of a "custodian" who acted for the investors, but had no rights, interest, or ownership in the notes or the pooled securities.

47.    Typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee.  Loans are sold to the trust, and the debts accumulated in a trust "pool."

48.    Upon information and belief, this follows the traditional pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary.

49.    In securitization cases, however, the purported trust is nothing more than a vehicle for transferring debt and the purported trustee acts merely as a custodian.

50.    Specifically, upon information and belief, transfer of notes and debt to the trust is intended as a true sale for tax purposes, not a transfer in trust in the traditional sense, meaning there is no true trust beneficiary.  The trust is simply a vehicle for pooling of the debts and the subsequent sale of those debts to others: investors in the MBS.

51.    Purchasers (or investors) of mortgage-backed securities ("MBS") are given "certificates" certifying their ownership interest in the pooled group of "loans" and their right to obtain payments due under the pooled group of notes.

52.    Frequently, the "custodian" appointed by the securitizers is the original lender.

53.    Investors in MBS do not, however, sign the Pooling and Servicing Agreement.

-10-

54.     Accordingly, the Pooling and Servicing Agreements do not bind the interests of the investors relative to the mortgages or trust deeds associated with the notes pooled in the MBS, as such would violate the statute of frauds.

55.     Further, the "custodian" appointed by the securitizers is not a "holder in due course" of the notes in the MBS.

56.     Because the "custodian" is not the "holder in due course" of the notes, the "custodian" has no authority to call default upon the notes in the MBS.  Nor does the custodian have the authority to foreclose the notes in the MBS.

57.     Thus, for example, to demonstrate a right to foreclose, it is not sufficient for BAC merely to have possession of a note if the note has been securitized.  Indeed, if the note has been securitized, the possessor of the note is presumptively merely a custodian.  And if BAC has possession of the notes merely as a custodian for investors in the MBS, BAC may not foreclose without demonstrating an express agency granted by all of the investors in the MBS to foreclose on their behalf.

58.     In the ordinary course of securitization, typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee.  Loans are sold to the trust, and the debts accumulated in a trust "pool."

59.     Upon information and belief, this follows the traditional pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary.

60.      However, upon information and belief, transfer to the trust is intended as a true sale for tax purposes, not a transfer in trust in the traditional sense, meaning there is no true beneficiary.  The trust is simply a vehicle for pooling of the debts, and sale of the assets to others: the investors in the MBS.

61.     The investors in the MBS give value, and, in exchange, receive certificates, which certify their ownership of the debt.

62.     The value given by the investors in the MBS, as evinced in their MBS certificates, essentially replaces the value in the pooled and parceled notes.  In other words, the certificates the investors in the MBS receive evincing their ownership in the MBS may be regarded as replacement of the notes because the certificates of ownership are the negotiated instruments that evince the debt secured by the mortgage or trust deeds.

63.     The interest held by the investors in the MBS is not that of a trust beneficiary: it is express ownership of debt.  The trust setup by the securitizers is emptied of assets, and the trustee thereafter typically performs no functions.

64.     Upon information and belief, there are no true beneficiaries of the purported trust.

65.     Moreover, the securitizers appoint loan servicers for the loans, but such appointment does not bind or involve the investors.

66.     Indeed, any Pooling and Servicing Agreement unsigned by investors in the MBS is not an express agency agreement because it does not satisfy the Statute of Frauds.

67.     Summarizing, in the ordinary course of securitization, Pooling and Servicing Agreements are entered into by the securitizers, but not the investors in MBS. The original lenders and the "trustee" or "custodian" execute the certificates of ownership in the MBS, which are issued to but not signed by the MBS investors.

68.    Transfer of the beneficial interest in a note and thus a mortgage or trust deed confers upon the investors in the MBS authority to declare a default and authorize foreclosure.

69.    These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary.  Nor, if challenged, can such authorization be presumed.

70.    While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, assuming they exist, or has obtained instruction from them.

71.    Thus, trustees or custodians in the situation described above may not declare default or authorize foreclosure unless they can show their agency to act for the investors in the MBS.

**THE "NOTES" IN THIS ACTION**

72.    Upon information and belief, the Plaintiff's notes were securitized in a manner similar to that described above.

73.    Upon information and belief, the Plaintiff's notes were pooled with similar debts pursuant to a Pooling and Servicing Agreement between Lender and a servicer, in which that servicer purported to act as trustee of a trust created thereby, for the purpose of selling such debts as securities to investors, and appointing a separate servicer of the pooled debts, and a custodian of the notes, including the Plaintiff's Note, evidencing such debts, for the benefit of such investors.

74.    As a result of the transfer of the First Note and Second Note as part of these securities transactions, Defendants, with the possible exception of the Doe

Defendants, are not the present owners of the debts under the respective Notes or the obligees thereon.

75.     Plaintiff, and, upon information and belief, Defendants, do not know who is or are the present owners of the debt evidenced by the First Note or Second Note, or the obligees thereon.

76.     Upon information and belief, neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the Plaintiff or who was or is a lawful beneficiary under the First Trust Deed or Second Trust Deed ever declared a default of the Note executed by Plaintiff and no true beneficiary with a beneficial interest under the First Trust Deed and Second Trust Deed ever declared a default under the respective Notes and Trust Deed.

77.      No proper beneficiary under the First Trust Deed or Second Trust Deed ever directed or will ever direct a sale of the property owned by Plaintiff in which Lender is named as beneficiary at issue in their action.

78.     On information and belief, no currently named Defendant is a holder in due course of the Notes and thus all named Defendants are subject to all defenses and claims that the consumer could raise against the assignor of the Notes as allowed by California law.

**MERS'S ROLE IN THE TRANSACTION AND DEFENDANTS' TACIT CONSPIRACY**

79.     Mortgages are governed by two bodies of law.  While the making, taking, and transfer of promissory notes is governed by the law of contracts and the uniform commercial code, the making taking and transfer of trust deeds in real property is governed by the law of real property, real property assignments and the law of recording.

80.     MERS is a clearinghouse and tracking system whereby mortgages are traded through electronic means.

81.     MERS claims to bypass the need for age honored and traditional recording formalities by virtue of its electronic ownership tracking system.

82.     The MERS electronic ownership tracking system is not public.

83.     On information and belief, the MERS electronic ownership tracking system is not reliable, accurate, or comprehensive and is not as simple, as easily understood, or as easily accessible, as the state real property recording system.

84.     Upon information and belief, MERS has made money in its scheme with the banks that created in order to avoid paying recording fees to the states for securitizations, and to smooth the securitization process.

85.     With respect to this matter, MERS was named as the beneficiary in the original Trust Deed, but "solely as a nominee" for the "Lender."

86.     MERS risked no money and had no interest in the performance or non-performance of the obligation tied to the First Trust Deed or Second Trust Deed.

87.     Indeed, MERS, although claiming to be a beneficiary under the First Trust Deed and Second Deed of Trust, never had a pecuniary interest in the payments applied to the Note.

88.     Therefore, MERS was not a valid or legitimate beneficiary under the Trust Deeds.

89.     Upon information and belief, MERS does not have a valid agency relationship with any true party in interest.

90.     Upon information and belief, MERS has never had a valid agency relationship with any true party in interest.

-15-

91.     California's deed of trust statutes contemplate that a beneficiary under a deed of trust must be a true party in interest, with the rights of a stakeholder.

92.     California law regarding non-judicial foreclosure does not contemplate that the "beneficiary" of the deed of trust may be a computer database.

93.     MERS is not the Lender or Beneficiary under the First Trust Deed or Second Trust Deed and has no legal interest to transfer to any entity, including BAC or America's Wholesale Lender.

94.     Plaintiff's First Trust Deed and Second Trust Deed recognizes the true party in interest to the transaction, stating that the following rights belong to the "Lender", not MERS, the purported beneficiary:

    a.  "Lender" releases the security interest.

    b.  Notices are to be sent to "Lender".

    c.  "Lender" has the right to enforce the security instrument.

    d.  "Lender" shall appoint the substitute trustee.

    e.  "Lender" invokes the power of sale by ordering the Trustee to sell the property.

95.     Clearly, MERS is not the "Lender" and cannot properly perform any of these functions.

96.     MERS and the other Defendants misrepresented or ratified others' misrepresentations of each entity's claimed legal status in connection with the Plaintiff's Note and Trust Deed.

97.     Defendants failed to disclose the true beneficiary; MERS was not a true beneficiary.

98.    In fact, no true beneficiary existed after the origination of the loan, as the interest in the Note, arguably held by the investors in the MBS, was destroyed by the parsing and combining of the debt with other borrowers' debts.

99.    MERS and the other Defendants had reason to know that the Trust Deed and the assignment of the Trust Deed contained false claims but, despite this, recorded them or caused them to be recorded in violation of California law.

**ADDITIONAL OVERREACHING AND MISFEASANCE BY DEFENDANTS**

100.    The lender's agent in procuring the loan provided false and misleading income information and did not provide full and complete answers to the Plaintiff's inquiries on his income verification.

101.    The Plaintiff, who had consistently and regularly made his mortgage payments since originally obtaining his loan, could no longer make payments.  As such, he knew he was going to have problems making his mortgage payments in the future.  As a result, Plaintiff reached out to BAC, who he was led to believe had the authority to make decisions with respect to the mortgage, and asked if they would consider a modification of his loan or any assistance in reducing his monthly mortgage payment, even if only temporarily.

102.    The Plaintiff hired Ryan Rockwood, a third party representative, to negotiate with BAC on his behalf.

103.    BAC negotiated with Mr. Rockwood, and at the request of BAC the Plaintiff gathered all of the requested information, including bank statements, tax returns, monthly budgets, bills, and a hardship letter.  Plaintiff then sent those documents by (fax, email, certified mail, overnight mail) in accordance with the instructions.

104.    Ultimately the negotiations proved to be unsuccessful, and BAC refused to offer any program to the Plaintiff to modify his loan.

105.    Upon information and belief, BAC never intended to modify Plaintiff's loan nor did BAC even have the authority to modify Plaintiff's loan.

106.    Pursuant to the Pooling and Servicing Agreement BAC entered into with the Debt Pool described herein, BAC was actually offered disincentives to negotiate with Plaintiff on his loan and was in fact incentivized and rewarded for pursuing the foreclosure process.

107.    Plaintiff alleges that its claims offset the amount of delinquent payments OR plaintiff is not in default because of Defendants' misconduct concerning the underlying transaction.

108.    Plaintiff makes only state statutory and common law claims in this complaint and to the extent that any claim is completely preempted by federal law, plaintiff does not make it.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief against all Defendants)**

109.    Plaintiff incorporates and realleges in full paragraphs 1 through 108 of this Complaint.

110.    A true, present, and justiciable controversy exists between Plaintiff and Defendants.

111.    The Defendants in this dispute will seek affirmative relief by trying to foreclose on the subject property non-judicially.

112.    Defendants, however, have failed to provide the Plaintiff with any evidence of their authority to foreclose or a valid accounting for the Plaintiff's Note

113.    This forced the Plaintiff to sue, as is his right under the Trust Deed's express language acknowledging Plaintiff's rights to bring court action to assert the nonexistence of default or any other defense she have to acceleration and sale.

114.    On the foreclosure claims, the Plaintiff is actually defending the right of a proper foreclosor (which Defendants claim they are) to foreclose, now in a judicial forum by necessity.

115.    As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name.

116.    MERS is not the real party in interest since it styles itself merely as a nominee of the assignee of the beneficial interest in the First Trust Deed or Second Trust Deed, does not legitimately claim to be the holder of the First Note or Second Note with the power to enforce the instrument, does not claim that it has ever been in possession of the notes, cannot explain the circumstances surrounding the apparent absence of the original Notes, and has never identified the name of the purported assignee of the note from the original lender.

117.    Because: (1) instead of asserting it is owed anything on its own behalf, MERS claims to serve as the "nominee" of the entities that are actually entitled to repayment; (2) MERS does not have a valid agency relationship with any true party in interest; (3) MERS is not a valid Trust Deed beneficiary; and (4) for the other reasons laid out in this complaint, the preceding items should be judicially declared, and it should be further declared that MERS does not have the authority to supersede and ignore the traditional recording methods.

118.    Defendants have refused to provide requested evidence showing the Note's default and the authority to enforce the Trust Deed, and have marched to a trustee's sale without right.  This forced the Plaintiff to sue, to provide a forum for relief. Consequently, the Defendants are subject to the jurisdiction of the court and required to satisfy requirements of standing and the authority to conduct the sale before conducting it.

119.    Since, to demonstrate a right to foreclose, it is not sufficient for BAC merely to have possession of the Notes and since BAC has possession of the Notes merely as a custodian for investors of the MBS, BAC may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

120.    The Court should declare that because BAC is merely a custodian for investors of the MBS, BAC may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

121.    Moreover, the purported Lender and Servicer are not entitled to the Subject Property, which is security for the true holder of the Notes—the investors in the MBS, upon information and belief.  The purported Lender and Servicer parted with no money and they are entitled to collect none.  The Court should declare and enter an injunction to this effect.

122.    Because of the above facts, the Defendants should be declared to have no right to foreclose on their own behalf or should be required to demonstrate any right they claim to foreclose as agents of the investors in MBS.

## SECOND CLAIM FOR RELIEF
### (Intentional Misrepresentation against BAC)

123.    Plaintiff incorporates and realleges in full paragraphs 1 through 122 of this Complaint.

124.    At the time Plaintiff contacted BAC, as described above, BAC misrepresented that he may qualify for a loan modification that would reduce his monthly payment and payoff amount.

125.    At the time BAC made this representation to Plaintiff, BAC knew, upon information and belief, that it had no intent to modify Plaintiff's loan.

126.    Instead, BAC led the Plaintiff to believe that he could negotiate with BAC only if he provided his financial information, which the Plaintiff provided in good faith.

127.    Upon information and belief, BAC knew, from the outset, that it would seek to foreclose the property.  Yet, upon information and belief, BAC continued to lead the Plaintiff to believe that they would not attempt to foreclose.

128.    BAC, knowing full well that it would not work with Plaintiff, nevertheless misrepresented the possibility that they would work with Plaintiff in order to take additional monies from Plaintiff by false pretenses

129.    Based on BAC's misrepresentations, the Plaintiff reasonably believed that BAC would work with him and help him avoid foreclosure on his home.

130.    The Plaintiff has been damaged as a result of BAC's and BAC's misrepresentations in that she now faces foreclosure, which may have been avoided, had BAC not intentionally misrepresented facts to the Plaintiff.

**THIRD CLAIM FOR RELIEF**
**(Negligent Misrepresentation against BAC)**

131.    Plaintiff incorporates and realleges in full paragraphs 1 through 130 of this Complaint.

132.    As described above, BAC, in the course of its business, repeatedly supplied false information to the Plaintiff with respect to his ability to avoid foreclosure.

133.    Because BAC, who claims to be servicing the loan has misrepresented or purposefully withheld the identity of the "Note Holder" as defined under Plaintiff's Promissory Note, and the "Beneficiary" as defined under Plaintiff's Trust Deed, BAC has therefore committed misrepresentation.

134.    Because BAC has failed to present evidence, upon Plaintiff's numerous pre-litigation written and verbal requests including a letter sent regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which BAC did not respond at all.  BAC has consistently obfuscated Plaintiff's numerous requests for basic information (about who owned his note, and who was being paid for it, and in what amounts), BAC has therefore committed misrepresentation

135.    BAC failed to exercise reasonable care in making representations to the Plaintiff, both in writing and verbally.

136.    BAC also failed to exercise reasonable care and diligence in obtaining relevant and necessary information from the Plaintiff prior to making representations and giving guidance to the Plaintiff.

137.    BAC knew or should have known that the information they supplied, or failed to supply, to the Plaintiff was inaccurate.

138.   The Plaintiff has been damaged as a result of BAC's misrepresentations in that he now faces foreclosure, which may have been avoided, had BAC not misrepresented facts to the Plaintiff.

**FOURTH CLAIM FOR RELIEF**
**(Quiet Title against all Defendants)**

139.   Plaintiff incorporates and realleges in full paragraphs 1 through 138 of this Complaint.

140.   Upon information and belief, the Plaintiff's First Trust Deed and Second Trust Deed and Note were intentionally separated by assignment of the respective trust deeds without assignment of the corresponding note during the securitization process, thus lodging foreclosure rights with the investors in the MBS.

141.   Subsequent to securitization of the Plaintiff's Note, America's Wholesale Lender, Countrywide, BAC, and MERS have no interest in the subject property.

142.   The Plaintiff's interest in and title to the Subject Property is greater than that of Countrywide, America's Wholesale Lender, BAC, and MERS.  The Plaintiff has the ability to pay the outstanding debt on the property should the proper party be determined.

143.   Accordingly, title in the Subject Property should be quieted in favor of the Plaintiff and against Countrywide, America's Wholesale Lender, BAC, and MERS.

**FIFTH CLAIM FOR RELIEF**
**(Lack of Formation of Contract)**

144.   Plaintiff incorporates and realleges in full paragraphs 1 through 143 of this complaint.

145.   The First Trust Deed and Second Trust Deed was void upon execution because the statements contained therein were untrue and the failure to disclose these

facts to the borrower acted to the borrower's detriment and there was no meeting of the

minds, no consideration and an utter failure to create a security instrument.

**SIXTH CLAIM FOR RELIEF**
**(PLEADED IN THE ALTERNATIVE)**
**(Breach of Covenant of Good Faith and Fair Dealing against BAC)**

146.     Plaintiff incorporates and realleges in full paragraphs 1 through 145 of this

Complaint.

147.     The Trust Deed and the Note constitute valid and binding contracts.

148.     In California, every contract includes an implied covenant of good faith

and fair dealing.

149.     BAC became a party to the First Trust Deed and/or Note through the

assignment of the First Trust Deed and/or Note by America's Wholesale Lender and/or

Countrywide.

150.     BAC became a party to the Second Trust Deed and/or Note through the

assignment of the Second Trust Deed and/or Note by America's Wholesale Lender

and/or Countrywide.

151.     As a party to the Trust Deed and/or Note BAC was subject to the implied

covenant of good faith and fair dealing.

152.     Upon information and belief, Defendant Does may have become parties to

the Trust Deed and/or Note through assignment by America's Wholesale Lender,

Countrywide, BAC, or other unknown individuals or entities.

153.     If assigned, Defendant Does were subject to the implied covenant of good

faith and fair dealing.

154.     BAC breached the implied covenant of good faith and fair dealing by,

among other things:

a.   Making representations and material misrepresentations to the

Plaintiff concerning the status of the Plaintiff's Note and the

Plaintiff's ability to modify the terms of his Note;

b.   Failing to present evidence, upon Plaintiff's numerous pre-

litigation written and verbal requests, including letters, regarding

the unidentified and/or misrepresented current foreclosor's

authority; and

c.   Failing to provide proof that it was (or is) the true holder of the

Note or that it was the authorized agent of the investors in the

MBS for purposes of foreclosing the Note.

155.   Upon information and belief, the Doe Defendants may have violated the

implied covenant of good faith and fair dealing in the same manner.

156.   As a direct and proximate result of the BAC's and BAC's conduct, and,

upon information and belief, the conduct of the Doe Defendants, Plaintiff has incurred,

among other things, substantial damages, in an amount to be shown at trial.

157.   Moreover, Defendants' conduct has forced Plaintiff to retain an attorney

to obtain the benefits he is owed under the Agreement.  As such, Plaintiff is entitled to

recover his attorney's fees and costs associated with this lawsuit.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter its Order herein:

1.   Enjoining further dispositions of the subject realty pending resolution

hereof;

-25-

2.      Declaring that Defendants lack any interest in the subject property which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the subject property;

3.      Terminating all present collection activities under any security in the subject property and enjoining any further such collection actions not originated by the owners of the debt;

4.      Declaring that the Trust Deed is not a lien against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in Plaintiff against Defendants and all claiming by, through, or under them;

5.      Refunding to Plaintiff from Defendants, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiff costs of the action, including a reasonable attorney's fee;

6.      Offset the amount of delinquent payments or a declaration that Plaintiff is not in default because of Defendants' misconduct concerning the underlying transaction; and/or

7.      For such other and further relief as the court deems just and equitable.

DATED: March 3, 2011.                    CORVUS LAW GROUP, LLC

                                           /s/ Quynh Trinh

                                         _____
                                         Quynh Trinh
                                         *Attorney for Plaintiff*