Marcus R. Mumford, CA Bar No. 243270
CORVUS LAW GROUP, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84108
Phone: 888.315.4735
Fax: 888.316.0929
mrm@corvuslaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM B. KIMBALL,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICA'S WHOLESALE LENDER;<br>COUNTRYWIDE HOME LOANS, INC.;<br>BAC HOME LOAN SERVICING, LP; and<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC; and<br>DOES 1-10,<br><br>        Defendants. | Case No. 5:10-cv-05670<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      June 16, 2011<br>Time:     1:30 p.m.<br>Dept:     4 |

Pursuant to Rule 7, Federal Rules of Civil Procedure, and L.R. 7-4, Plaintiff Jim B. Kimball ("Kimball") submits the following memorandum of points and authorities in opposition to Defendants Countrywide Home Loans, Inc.'s ("Countrywide"), BAC Home Loans Servicing, LP's ("BAC"), and Mortgage Electronic Registration Systems, Inc.'s ("MERS") motion to dismiss and memorandum in support thereof ("Defs.' Memo.").

# TABLE OF CONTENTS

**Page**

INTRODUCTION ……………………………………………………………………. 1

LEGAL STANDARD ………………………………………………………………… 4

ARGUMENT…………………………………………………………………………... 5

I.     CALIFORNIA'S TENDER RULE DOES NOT APPLY IN THIS
       CASE BECAUSE KIMBALL IS NOT ALLEGING IRREGULARITY
       IN THE SALE PROCEDURE BUT IS CHALLENGING DEFENDANTS'
       AUTHORITY TO INITIATE FORECLOSURE. ………………………………... 5

       A.     California's Tender Rule does not Apply in all Foreclosure
              Cases. …………………………………………………………………… 6

       B.     Application of the Tender Rule in this Case would Preclude
              Kimball from Presenting Evidence Regarding Defendants'
              Fraud and other Misconduct. …………………………………………… 8

II.    DEFENDANTS' MOTION MUST BE DENIED BECAUSE
       KIMBALL HAS STATED CLAIMS CHALLENGING BAC'S
       AND MERS'S LEGAL AUTHORITY TO INITIATE NON-JUDICIAL
       FORECLOSURE PROCEEDINGS. ………………………………………….... 9

       A.     BAC and MERS Cannot Initiate Foreclosure Proceedings in
              this Case Because They Lack Authority From the Owner of
              the Notes. ……………………………………………………………… 9

III.   DEFENDANTS' MOTION MUST BE DENIED BECAUSE
       KIMBALL HAS STATED CLAIMS FOR RELIEF. …………………………… 15

       A.     Kimball's FAC Adequately States a Claim for Declaratory
              Judgment (First Cause of Action). …………………………………… 15

       B.     In the Alternative, Kimball Has Stated a Claim for Breach
              of the Covenant of Good Faith and Fair Dealing Against
              BAC. ……...…………………………………………………………... 16

       C.     The FAC Adequately States a Claim for Quiet Title Against
              All Defendants. ……...………………………………………………... 17

IV.    CONCLUSION…………………………………………………………………… 18

CERTIFICATE OF SERVICE………………………………………………………… 20

1

### TABLE OF AUTHORITIES

2

<u>CASES</u>

3

*Abdallah v. United Savs. Bank,*
43 Cal.App.4th 1101 (Cal.App. 1 Dist. 1996). …………………………………………………... 5

4

5

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937). ………………………………………………………………………… 16

6

7

*Armacost v. HSBC Bank USA,*
No. 10-CV-274-EJL-LMB, 2011 WL 825151
(D.Idaho Feb. 9, 2011). ……………………………………………………………… 6, 10

8

9

*Arnolds Management Corp. v. Eischen,*
158 Cal.App.3d 575 (Cal.App. 2 Dist. 1984). ………………………………………………… 5, 8

10

11

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009). …………………………………………………………………... 4, 9

12

13

*Bank of New York v. Raftogianis,*
10 A.3d 236 (N.J.Super.Ct. Ch. Div. 2010). …………………………………………………… 10

14

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007). ……………………………………………………………………... 4, 9

15

16

*Bellistri v. Ocwen Loan Servicing, LLC,*
284 S.W.3d 619 (Mo.Ct.App. 2009). ………………………………………………………….. 12, 14

17

18

*Crummer v. Whitehead,*
230 Cal.App.2d 264 (Cal.App. 1 Dist. 1964). ………………………………………………… 5

19

20

*Das v. WMC Mortgage Corp.,*
No. C10-0650 PVT, 2010 WL 4393885 (N.D.Cal.
Oct. 29, 2010). …………………………………………………………………………… 6, 7

21

22

*De Valle v. Mortgage Bank of Cal.,*
No. CV-F-09-1316 OWW/DLB, 2010 WL 1813505 (E.D.Cal.
May 5, 2010). …………………………………………………………………………… 6

23

24

*FPCI RE-HAB 01 v. E & G Investments, Ltd.,*
207 Cal.App.3d 1018 (Cal.App. 2 Dist. 1989). …………………………………………… 6, 7, 8

25

26

*In re Vargas,*
396 B.R. 511 (Bankr. C.D. Cal. 2008). …………………………………………………... 11, 15

27

28

*In re Wilhelm*,
407 B.R. 392 (Bankr. D. Idaho July 7, 2009). ……………………………………………….. 12

*Karlsen v. American Sav. And Loan Assn.*,
15 Cal.App.3d 112 (Cal.App. 2 Dist. 1971). ……………………………………………… 5

*Lazy Y Ranch, Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008). …………………………………………………………… 4

*MedImmune, Inc. v. Genetech, Inc.*,
549 U.S. 118 (2007). …………………………………………………………………… 16

*Mohamed v. Jeppesen Dataplan, Inc.*,
614 F.3d 1070 (9th Cir. 2010). ………………………………………………………… 4

*NL Industries, Inc. v. Kaplan*,
792 F.2d 896 (9th Cir. 1986). ………………………………………………………… 4

*Saxon Mortg. Serv., Inc. v. Hillery*,
No. C-08-4357 EMC, 2008 WL 5170180 (N.D. Cal.
Dec. 9, 2008). ………………………………………………………………………… 12

*Shields v. First Magnus Financial Corp.*,
No. 3:10-cv-00641-RCJ-RAM, 2011 WL 1304734
(D. Nev. April 1, 2011). ………………………………………………………… 10, 12, 15

*U.S. Bank Nat'l Assoc. v. Ibanez*,
No. SJC-10694, 2011 WL 38071 (Mass. Jan. 7, 2011). ………………………… 9, 10, 18

*Williams v. Koenig*,
219 Cal. 656 (1934). …………………………………………………………………... 5

*Yamamoto v. Bank of New York*,
329 F.3d 1167 (9th Cir. 2003), *cert. denied*, 540 U.S. 1149
(2004). ………………………………………………………………………………… 6

**STATUTES**

28 U.S.C. § 2201(a) …………………………………………………………………….. 15

Cal. Civ. Code § 2923.5 ……………………………………………………………….. 7

Cal. Civ. Code § 2936 ………………………………………………………………… 1

# INTRODUCTION

In his Complaint, Kimball alleges that Defendants do not have the authority to initiate or cause a trustee to conduct a non-judicial foreclosure of his property located at 1720 Grace Avenue, San Jose, California 95125 ("Subject Property") or, at a minimum, Defendants must establish their legal authority to initiate such proceedings prior to taking such actions.  In moving to dismiss the FAC, Defendants do not address this issue.  The entirety of Defendants' motion rests on the assumption that BAC (through MERS) is the properly appointed servicer and that it has the legal right to conduct a non-judicial foreclosure.  Due to the lack of recorded assignments, however, there is no way of determining whether this is the case.  Instead, Defendants simply assume the factual issues that form the crux of Kimball's claims come out in favor of Defendants.  Such an assumption is not a proper basis for a motion to dismiss.

The crux of Kimball's argument is that because the original lender under the Notes, Defendant Countrywide, sold Kimball's Notes into a pool of mortgage-backed securities, the right to seek a remedy for default was transferred along with the Notes.  In California, as in most states, the security follows the debt.  *See* Cal. Civ. Code § 2936 (stating, "the assignment of a debt secured by mortgage carries with it the security.").  Thus, when Countrywide sold its interest in Kimball's Notes, it also transferred away its right to seek a remedy for default on the Notes.

It is worth noting that Kimball does not challenge the rights or authority of a *properly* appointed or assigned trustee or beneficiary; rather, Kimball challenges *Defendants'* status as the entities vested with the right to appoint a trustee to seek recovery on the Notes by foreclosing on the Subject Property pursuant to Kimball's Deeds of Trust ("DOTs").  While Kimball has attempted to discover who owns his Notes, it is Defendants' actions that have prevented Kimball from knowing who his contract is with.  Indeed, by selling and assigning Kimball's Notes behind closed doors, not recording the sales and assignments, and refusing to provide information regarding the sales and assignments, Defendants have purposefully and intentionally prevented

Kimball from both dealing with the holder(s) of his Notes and determining whether Defendants have the authority to initiate non-judicial foreclosure proceedings.

As courts, legislatures, and commentators have repeatedly recognized,[1][2][3] "purported" trustees or servicers have frequently foreclosed on homes *without* the authority to do so.[4]  A

---

[1] *See* Prashant Gopal, *Arizona Bill Would Void Foreclosures Without Full Title History*, Bloomberg, Feb. 23, 2011, http://www.bloomberg.com/news/2011-02-23/arizona-bill-would-void-home-foreclosures-without-complete-title-history.html ("Arizona may become the first state to require lenders to prove they have the right to foreclose by providing a complete list of any previous owners of the mortgage, under a bill passed yesterday by its Senate."); *id.* ("Lawmakers in states including New York, Oregon and Virginia also have proposed legislation to address concerns among consumer advocates that lenders or mortgage servicers are using incomplete or false paperwork to repossess properties in default. The attorneys general of all 50 states are jointly investigating how the mortgage-servicing industry operates.")

[2] According to Michael Greenberger, a professor at the University Maryland School of Law, "What has been discovered – and our clinics at my law school are heavily involved in class action lawsuits – is there is no paperwork to show who owns the house when the foreclosures come to reckoning. . . . The banks do not have the documentation they need to foreclose on about 50 percent of the houses they want to foreclose on. . . . Somewhere in the process of moving from a mortgage to a fancy financial product, people just forgot that they had to save the documentation."  Transcript of the Diane Rehm Show, *Update on the U.S. Economy and Housing Market*, originally aired April 12, 2011 on National Public Radio, *available at* http://www.thedianerehmshow.org/shows/2011-04-12/update-us-economy-and-housing-market/transcript

[3] *See generally* Berdard, Moe, *Connecticut Sen. Duff Brings Bill Through Senate to Stop MERS*, LoanSafe.org, May 20, 2011, http://www.loansafe.org/connecticut-sen-duff-brings-bill-through-senate-to-stop-mers ("Additionally, property owners would no longer be allowed to register with the Mortgage Electronic Registration System (MERS) and instead would be required to register with the local municipal town clerk.") (*last accessed* May 31, 2011).

[4] On April 13, 2011, the Federal Deposit Insurance Corporation ("FDIC") issued a "Statement on Enforcement Orders Against Large Servicers Related to Foreclosure Practices." (Statement *available at* http://www.fdic.gov/news/news/press/2011/pr11069.html.)  In that Statement, the FDIC stated:

> The findings of the interagency review clearly show that the largest mortgage servicers had significant deficiencies in numerous aspects of his foreclosure processing. These deficiencies included the filing of inaccurate affidavits and other documentation in foreclosure proceedings (so-called "robo-signing"), inadequate oversight of attorneys and other third parties involved in the foreclosure process, inadequate staffing and training of employees, and the failure to effectively

-2-

1    recent decision by the Court of Appeals of Michigan in *Residential Funding Co, LLC v. Saurman*,

2    ---N.W.2d----, 2011 WL 1516819 (Mich.App. 2011) is instructive.  There, the court held that the

3    homeowners were entitled to judgment as a matter of law because MERS had no authority to

4    initiate a non-judicial foreclosure because "MERS did not own the indebtedness, own an interest

5    in the indebtedness secured by the mortgage, or service the mortgage."  *Id.*  The court therefore

6    concluded that "MERS' inability to comply with the statutory requirements rendered the

7    foreclosure proceedings . . . void *ab initio*."  *Id.*

8         In this case, Kimball simply seeks, through his claim for declaratory relief, a

9    determination as to the rights of the parties based on sufficient evidence to determine whether

10   Defendants own the Notes at issue and/or whether Defendants are acting on behalf of the true

11   owner(s) of the Notes.  In other words, the issues presented here relate to whether *Defendants*

12   have the *legal right* to foreclose on the Subject Property, not whether securitization itself defeats

13   a servicer's ability to enforce promissory notes and deeds of trust.

14        Kimball has alleged that Defendants have refused to provide him with records of

15   assignment, reassignment, and/or sales of the Notes,[5] and that Defendants do not own the Notes

16   _____

17        coordinate the loan modification and foreclosure process to ensure effective
     communications to borrowers seeking to avoid foreclosures.

18        ***

19        While today's orders put these large servicers on a path to improving his
20        management of the foreclosure process, they do not purport to fully identify and
     remedy past errors in mortgage-servicing operations of large institutions. Much
21        work remains to ensure that the servicing process functions effectively, efficiently,
     and fairly going forward. Importantly, these enforcement orders do not contain
22        monetary remedial measures. There is evidence that some level of wrongful
     foreclosures has occurred. *It is important that servicers identify any harmed*
23        *homeowners and provide appropriate remedies. This is essential to managing*
     *litigation and reputation risk, as well as fairness to borrowers.*
24

25   *Id.* (emphasis added).

26
     [5] Records these assignments, reassignments, and/or sales of the Notes and DOTs are not available
27   to Kimball because Defendants have not recorded them.

28                                                     -3-

1    or the rights secured by the associated DOTs.  Kimball has further alleged that Defendants are

2    attempting to exercise remedies that belong to others—the actual owner of the Notes—and that

3    Defendants can only exercise the remedies established in the DOTs when vested with the proper

4    legal authority.

5    **LEGAL STANDARD**

6         The Ninth Circuit has recognized that in considering a motion to dismiss, the allegations

7    in the complaint "are accepted as true and construed in the light most favorable to the plaintiff."

8    *Lazy Y Ranch, Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Moreover, "[d]ismissal is

9    warranted only if it appears to a certainty that [the plaintiff] would be entitled to no relief under

10    any state of Facts that could be proved."  *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

11    Cir. 1986).  The recent United States Supreme Court decisions in *Bell Atlantic v. Twombly*, 550

12    U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), have not changed this fundamental

13    pleading principle.

14         In interpreting and applying *Twombly*, the Ninth Circuit recently stated, "[i]f Plaintiffs

15    here have stated a claim on which relief can be granted, they should have an opportunity to

16    present evidence in support of his allegations, without regard for the likelihood of ultimate

17    success."  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1100 (9th Cir. 2010).

18         Thus, to succeed on their motion, Defendants must establish that, even assuming *all* of the

19    facts pleaded in the FAC are true, Kimball is not entitled to any relief sought.  This, Defendants

20    have not done.

21

22

23

24

25

26

27    -4-

28

1
2
3                                    **<u>ARGUMENT</u>**
4  **I.     CALIFORNIA'S TENDER RULE DOES NOT APPLY IN THIS CASE BECAUSE**
5         **KIMBALL IS NOT ALLEGING IRREGULARITY IN THE SALE PROCEDURE**
6         **BUT IS CHALLENGING DEFENDANTS' AUTHORITY TO INITIATE**
7         **FORECLOSURE.**
8         Defendants assert that the Court should dismiss all of Kimball's claims because Kimball
9  failed to comply with California's tender rule.  Defs.' Memo., at 4-5.  However, the tender rule
10 does not apply in this case because Kimball is not alleging irregularity in the sale procedure but is
11 challenging Defendants' authority to initiate the foreclosure process.
12        The tender rule is not at issue here.  As the California Court of Appeal stated in *Arnolds*
13 *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (Cal.App. 2 Dist. 1984), "[i]t is settled
14 that an action to *set aside* a trustee's sale for *irregularities in sale notice or procedure* should be
15 accompanied by an offer to pay the full amount of the debt for which the property was security."
16 *Id*. (emphasis added) (citing *Karlsen v. American Sav. And Loan Assn.*, 15 Cal.App.3d 112, 117
17 (Cal.App. 2 Dist. 1971); *Crummer v. Whitehead*, 230 Cal.App.2d 264, 268 (Cal.App. 1 Dist.
18 1964); *Williams v. Koenig*, 219 Cal. 656, 660 (1934).
19        The cases cited above, as well as the cases cited by Defendants regarding the tender rule,
20 specifically refer to the *setting aside* of a foreclosure sale based on *improper sale procedures*.
21 *See, e.g., Abdallah v. United Savs. Bank*, 43 Cal.App.4th 1101, 1109 (Cal.App. 1 Dist. 1996)
22 (stating that tender must be made "in order to maintain any cause of action for *irregularity in the*
23 *sale procedure*) (emphasis added).  Contrary to Defendants' assertions, Kimball is not seeking to
24 *set aside* a foreclosure sale.  Kimball has sought relief from the Court to ensure that the
25 foreclosure process is initiated solely by the individual or entity with proper authority to exercise
26 remedial rights under the DOTs.  FAC, ¶¶ 111-22.  As discussed herein, Countrywide sold its
27
28                                        -5-

interest in Kimball's Notes, thereby transferring to the current Notes-holder(s) the authority to initiate foreclosure proceedings.  Kimball does not contest that some person or entity may have the right to foreclose on his Notes.  Kimball simply seeks to ensure that his home is not taken by a person or entity without proper authority.  The relief sought does not involve setting aside a sale. *See, e.g., Armacost v. HSBC Bank USA*, No. 10-CV-274-EJL-LMB, 2011 WL 825151, at *10 (D. Idaho Feb. 9, 2011) (noting that "Plaintiff is not challenging Defendant's procedure—he is challenging Defendant's right to initiate the procedure.").

Kimball has not alleged irregularities in the sale procedure that would trigger application of the tender rule.  *Id.*; *Arnolds*, 158 Cal.App.3d at 578; *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1022 (Cal.App. 2 Dist. 1989); *Das v. WMC Mortgage Corp.*, No. C10-0650 PVT, 2010 WL 4393885, *3 (N.D.Cal. Oct. 29, 2010).  As discussed above, the issues in this case involve Defendants' purported authority to initiate foreclosure proceedings, not procedural irregularities in the sale procedure.  *See Armacost*, 2011 WL 825151, at *10.  Thus, under California law, there is no requirement for Kimball to tender the amount of the debt owing under the Notes.

### A.    California's Tender Rule does not Apply in all Foreclosure Cases.

It appears from Defendants' Motion that they believe the tender rule applies in all cases involving foreclosure proceedings.  However, as described in *De Valle v. Mortgage Bank of Cal.*, No. CV-F-09-1316 OWW/DLB, 2010 WL 1813505, *9 (E.D.Cal. May 5, 2010), application of the tender rule is within the trial court's discretion.  *Id.* (stating, "[y]et *Yamamoto* did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded. Rather, all of these cases indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is incapable of performance.") (citing *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003), *cert. denied*, 540 U.S. 1149 (2004)).

-6-

Moreover, as made evident in *Das*, there are situations where application of the tender rule would actually run contrary to the rationale behind the rule. *See Das*, 2010 WL 4393885 at *2-*3. In *Das*, the plaintiff-homeowners filed suit against his lender and MERS for, among other things, allegedly violating Cal. Civ. Code § 2923.5, which prohibits a lender from filing a notice of default until 30 days after the lender has contacted the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a). The defendants argued that the plaintiffs' attempt to avoid foreclosure failed because the plaintiffs did not tender the amount of the secured indebtedness. *Das*, at *3. The court disagreed, stating that "[a]s one California appellate court has explained, 'the rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.'" *Id*. (quoting *E & G Investments*, 207 Cal.App.3d at 1022).

The *Das* court then explained that requiring a homeowner to tender the amount of the debt is proper if invalidating the foreclosure sale would be a useless act. *Id*. (quoting *E & G Investments*, 207 Cal.App.3d at 1021). The court determined that "voiding a foreclosure for violation of Section 2923.5 is not inherently a useless act absent tender," because the whole purpose of § 2923.5 is to provide the homeowner and lender an opportunity to discuss the possibility of a loan modification. *Id*. at *3. The court further noted that "[i]n situations like this, a requirement that the homeowner tender the entire amount of the secured indebtedness would actually defeat the purpose of the statute." *Id*.

The facts here are similar. The homeowner has alleged that Defendants do not possess proper authority to foreclose on his home. FAC, ¶¶ 1, 5, 34-38, 57, 68-71, 111-22. The declaratory relief sought by Kimball would allow him to avoid foreclosure by Defendants and provide Kimball the opportunity to discuss with the true owner(s) of the Notes the opportunity for a loan modification. Thus, applying the reasoning in *Das*, invalidating the foreclosure sale *by Defendants* without tender by Kimball would not be an inherently useless act because, through

-7-

1    declaratory relief by this Court, Kimball could avoid foreclosure by a party without proper

2    authority.

3         As recognized in *Das*, requiring Kimball to tender the full amount of the secured

4    indebtedness would actually run contrary to the rationale behind the tender rule. *See Das*, at *3.

5    Application of the tender rule in this case would require Kimball to essentially pay the entire

6    outstanding balance on the Notes—in other words, purchase the home—to avoid foreclosure.

7    This is far from the relief sought by Kimball in the FAC. *See* FAC, ¶¶ 111-22.  Kimball, instead,

8    seeks declaratory relief from the Court in order to determine the identity of the person or entity

9    possessing proper authority to initiate foreclosure proceedings.

10        **B.    Application of the Tender Rule in this Case would Preclude Kimball from**

11        **Presenting Evidence Regarding Defendants' Fraud and other Misconduct.**

12        California's tender rule does not apply to actions based on fraud.  In *E & G Investments*,

13   the California Court of Appeal determined that the tender rule "should not be read so broadly as

14   to preclude an action fraud or other misconduct." *E & G Investments*, 207 Cal.App.3d at 1022

15   (agreeing that "*Arnolds* was directed to actions precluding the opportunity of redemption or cure

16   by a junior lien holder," and not to actions for fraud or other misconduct.).  The court agreed with

17   the plaintiff that application of the tender rule in that case would completely insulate the

18   defendant's fraudulent conduct from suit. *Id*.

19        Here, Kimball has alleged that Defendants have engaged in fraud and other similar

20   misconduct.  As in *E & G Investments*, application of the tender rule to dismiss Kimball's claims

21   of fraud and other similar misconduct would completely insulate Defendants' fraudulent conduct

22   from suit.  Accordingly, dismissal of Kimball's claims for violation of the tender rule would

23   preclude Kimball from presenting evidence in support of these additional claims. *See* FAC, ¶¶

24   124-30, 132-38.

25

26

27

28

-8-

II.     **DEFENDANTS' MOTION MUST BE DENIED BECAUSE KIMBALL HAS**
        **STATED CLAIMS CHALLENGING BAC'S AND MERS'S LEGAL AUTHORITY**
        **TO INITIATE NON-JUDICIAL FORECLOSURE PROCEEDINGS.**

        A.     **BAC and MERS Cannot Initiate Foreclosure Proceedings in this Case**
               **Because They Lack Authority From the Owner of the Notes.**

        The core issue of this case is who owns Kimball's Notes.  Ownership is key because it is the owner who has the right to exercise the remedies identified in a deed of trust used to secure a promissory note, including the rights to declare default, appoint successor trustees, and the rights to initiate and conduct a non-judicial foreclosure sales.  Kimball has alleged that BAC and MERS are not the owners of the Notes and do not have the right to act on behalf of the owners of the Notes.  FAC, ¶¶ 1, 5, 34-38, 57, 68-71, 111-22.  These allegations are "well-pleaded" under *Iqbal* and *Twombly* because it is undisputed that Kimball' Notes was sold, assigned, and transferred (*see, e.g.*, FAC, ¶¶ 4, 22, 31, 34-38, 72), meaning that the rights associated with the Notes and DOTs repeatedly changed hands.  Thus, there is a valid dispute concerning who owns the Notes and the rights to act under the DOTs.  Accordingly, Kimball has set forth well-pleaded facts questioning BAC's and MERS's legal authority to exercise the remedies defined in Kimball's DOTs.

        The issue of a foreclosing entity's authority was recently addressed by the Massachusetts Supreme Court in *U.S. Bank Nat'l Assoc. v. Ibanez*, 941 N.E.2d 40, 2011 WL 38071 (Mass. 2011).  In that case, the court invalidated foreclosure sales because the foreclosing entities could not prove that they were assignees of the mortgages at the time they conducted the foreclosure sales:

> We agree with the [trial] judge that the [mortgagors] . . . failed to make the required showing that they were the holders of the mortgages at the time of foreclosures. As a result, they did not demonstrate that the foreclosures sales were valid to convey title to the subject properties, and their requests for a declaration of clear title were properly denied.

1   *Id.* at 44; *see also Shields v. First Magnus Financial Corp.*, No. 3:10-cv-00641-RCJ-RAM, 2011

2   WL 1304734, at *1 (D. Nev. April 1, 2011) (denying MERS' motion to dismiss in part because it

3   was not clear whether MERS had the ability to transfer the interest in the Notes "without some

4   more evidence of its agency to do so on behalf of First Magnus."); *Bank of New York v.*

5   *Raftogianis*, 10 A.3d 236, 253-54 (N.J. Super. Ct. Ch. Div. 2010) (holding that in New Jersey, a

6   judicial foreclosure state, "litigants facing foreclosure should be able to confirm that a complaint

7   is properly filed by an individual or entity with the authority to proceed").  BAC's and MERS's

8   motion must be denied because the allegations in the FAC, if taken as true, entitle Kimball to

9   relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (stating,  "[a] dismissal for failure

10  to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no

11  set of facts that would entitle it to relief.").

12          The *Ibanez* case is instructive in that both the trial court and the Massachusetts Supreme

13  Court were required to deconstruct the numerous assignments of the relevant mortgages in order

14  to determine which entity ultimately held the right to foreclose.  *Ibanez*, 941 N.E.2d at 45-49.  In

15  the end, it turned out that the foreclosing entities *did not* own the mortgages by proper assignment

16  at the time they conducted the foreclosure sales and hence the sales were voided by the courts.

17  The *Raftogianis* court reached the same conclusion.  *Raftogianis*, 10 A.3d at 265 ("[The

18  foreclosing entity] . . . failed to establish that it was entitled to enforce the Notes as of the time the

19  complaint was filed.").  In other words, the foreclosing entities did not have the authority to

20  conduct the foreclosures—the precise issue here.

21          Equally instructive is the recent case of *Armacost v. HSBC Bank USA*, No. 10-CV-274-

22  EJL-LMB, 2011 WL 825151 (D. Idaho Feb. 9, 2011), where the court concluded that the

23  defendant's (HSBC Bank) motion to dismiss should be denied because "the record is insufficient

24  to establish that Defendant had the right to institute the foreclosure proceedings on the Property as

25  a matter of law."  *Id.* at *6.  In that case, the foreclosing entity argued "that there is no

26  requirement under Idaho law that it produce the Notes, or to do anything else beyond that which

27

28                                                     -10-

is specifically articulated in the Idaho Trust Deed Act." *Id.* at *9. The court acknowledged the application of the Idaho Trust Deed Act but correctly surmised that the plaintiff was not challenging the defendant's compliance with the terms of the act for carrying out a non-judicial foreclosure sale; the separate and distinct issue was the plaintiff's challenge to the defendant's *authority* to initiate the sale under the Act:

> This Court does not believe, however, that the inquiry ends with Defendant's compliance with the Idaho non-judicial foreclosure statute. Liberally construing Plaintiff's complaint, as this Court must, Plaintiff is not challenging Defendant's procedure-he is challenging Defendant's right to initiate the procedure. One could not reasonably contend that compliance with a procedure gives substantive rights not otherwise possessed. The question remains whether Defendant's right or authority to foreclose on the Property remains.

*Id.* at *10. To the extent that BAC and MERS argue that the Court must assume they have the proper authority to proceed and their only obligation is to comply with non-judicial foreclosure procedures, their argument is contrary to existing case law on the issue.

Turning to the specific Notes and DOTs at issue, as alleged in the FAC, the "Lender" with respect to Kimball's Notes was America's Wholesale Lender (Countrywide). FAC, ¶ 17, 25. Likewise, the DOTs specifically define the "Lender" as America's Wholesale Lender (Countrywide). FAC, ¶¶ 21, 29.

MERS was a party to the DOTs, but solely as a nominee for the specifically defined Lender— Countrywide. *Id.* Accordingly, MERS *would* have the right to initiate foreclosure proceedings on behalf of the specifically defined Lender (Countrywide) but *does not necessarily* have the right to initiate foreclosure proceedings on behalf of subsequent owners of Kimball's Notes.

Once the Notes were sold or assigned, the owner(s)/assignee(s) of the Notes—not MERS—became the holders of the rights associated with the DOTs. "[I]f [the original lender] has transferred the Notes, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal." *In re Vargas*, 396 B.R. 511, 516-

-11-

17 (Bankr. C.D. Cal. 2008); *see also Shields v. First Magnus Financial Corp.*, No. 3:10-cv-00641-RCJ-RAM, 2011 WL 1304734, at *1 (D. Nev. April 1, 2011) (denying motion to dismiss where "it [was] not clear MERS did not have the ability to make this transfer without some more evidence of its agency to do so on behalf of First Magnus."); *Residential Funding Co, LLC v. Saurman*, ---N.W.2d----, 2011 WL 1516819 (Mich.App. April 21, 2011) (Because "MERS did not own the indebtedness, own an interest in the indebtedness secured by the mortgage, or service the mortgage," MERS could not "comply with the statutory requirements [thus] render[ing] the foreclosure proceedings . . . void *ab initio*."); *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619, 623 (Mo. Ct. App. 2009) (holding that MERS could not transfer the promissory Notes where it did not hold the Notes and where it had not been given authority by the holder of the Notes); *Saxon Mortgage Serv., Inc. v. Hillery*, 2008 WL 5170180, at *5 (N.D. Cal. Dec. 9, 2008) (holding that the owner of a promissory Notes must give MERS authority to assign the Notes and trust deed prior to assignment by MERS); *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho July 7, 2009).

As recently summarized by a bankruptcy court in New York, "There are several published New York state trial level decisions holding that the status of 'nominee' or 'mortgagee of record' bestowed upon MERS in the mortgage documents, by itself, does not empower MERS to effectuate an assignment of the mortgage. These cases hold that MERS may not validly assign a mortgage based on its nominee status, *absent some evidence of specific authority to assign the mortgage*." *In re Agard*, 444 B.R. 231, 250 (Bankr. E.D.N.Y. 2011) (emphasis added).

In order for MERS to retain the rights identified in the DOTs, it must have a separate agency contract "with the new undisclosed" assignee of the Notes and DOTs. *Id*.; *see also generally Castro v. Executive Trustee Services, LLC*, No. CV-08-2156-PHX-LOA, 2009 WL 438683, at *5 (D. Ariz. Feb. 23, 2009) (denying motion to dismiss on declaratory action claim where there was no evidence that MERS or the trustee was a transferee of the promissory Notes).[6]

---

[6] More and more, courts are refusing to recognize MERS as an "alternative" to statutory recording schemes and concluding that MERS "internal tracking" is not a valid substitute for public

-12-

The Arkansas Supreme Court (Arkansas is a trust deed state) took this issue head on and concluded that MERS could not act as the agent of the lender/owner of the promissory absent the specific direction of the current lender/owner of the Notes.

> MERS asserts authority to act, arguing that once it becomes the agent on a security instrument, it remains so for every MERS member lender who acquires ownership. This authority is alleged to arise from the contractual relationship between MERS and MERS members.  Thus, MERS argues it may act to preserve the rights of the lender regardless of who the lender may be under the MERS electronic registration.  *We specifically reject the notion that MERS may act on its own, independent of the direction of the specific lender who holds the repayment interest in the security instrument at the time MERS purports to act.*

*Mortgage Elec. Registration Sys., Inc. v. Southwest Homes of Ark., Inc.*, 301 S.W.3d 1, 4-5 (Ark. 2009) (emphasis added).  The court concluded that "[n]othing in the record shows that MERS had authority to act," and accordingly refused to accept MERS's argument that it was acting as an agent on behalf of the true owner of the debt.  *Id.* at 5.

Importantly, as stated above, Kimball does not allege or argue that securitization, in and of itself, defeats a servicer's ability to enforce his Notes and DOTs.  Kimball alleges that BAC and MERS lack the authority to initiate non-judicial foreclosure proceedings, not because the Notes

---

recordings.  *See, e.g.*, *In re Salazar*, No. BR 10-17456-MM13, 2011 WL 1398478, at *7 (Bankr. S.D. Cal. April 12, 2011) (collecting cases); *compare* FAC ¶¶ 80-84; *see also In re Agard,* 444 B.R. 231, 236 (Bankr. E.D.N.Y. 2011) (Bankr. E.D.N.Y. Feb. 10, 2011) ("MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.").  Commentators agree.  *See* Peterson, Christopher Lewis, Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory (September 19, 2010, *last revised* February 15, 2011) *available at* SSRN: http://ssrn.com/abstract=1684729:

> An increasing number of courts are taking a dim view of MERS-recorded mortgages and deeds of trust.  To date, *every state supreme court* that has looked at the issue has concluded that, despite its boilerplate language, MERS is not a mortgagee or deed of trust beneficiary.

*Id.* at 8 (emphasis added).

-13-

were securitized, but because the holders of the Notes never granted the authority to BAC and MERS. FAC, ¶¶ 1, 5, 34-38, 57, 68-71, 111-22.

Second, recent case law establishes that the Court must evaluate the securitization agreements between the holders of the Notes and Defendants to determine whether BAC and MERS have the right to act on behalf of the holders. For example, *CWCapital Asset Management, LLC, v. Chicago Properties, LLC*, 610 F.3d 497 (7th Cir. 2010) involved the appeal of a *bench trial* where both the trial court and the appellate court analyzed the specific terms of the pooling and servicing agreement that governed a securitized mortgage in order to determine whether the purported servicer actually held the rights it was attempting to assert in the lawsuit. In *CWCapital*, the servicer was required to establish its rights vis-à-vis the securitization pool and its trustee. *CWCapital*, 610 F.3d at 501. Here, Defendants are asking the Court to *assume* they possess the right to act on behalf of the unknown holders of Kimball's Notes. *Cf. Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619, 623 (Mo. Ct. App. 2009) (holding that MERS could not transfer the promissory Notes where it did not hold the Notes and where it had not been given authority by the holder of the Notes). Likewise, in *Greenwich Financial Services Distressed Mortgage Fund 3 LLC v. Countrywide Financial Corp.*, 603 F.3d 23 (2d Cir. 2010)— a case where the owners/holders of certificates in a mortgage-backed security pool sued the lender and *servicer* of the loans in the pool—the court, in passing, states that the specific pooling and servicing agreement determined the rights of the parties. *Greenwich*, 603 F.3d at 25 ("The terms of these securitization transactions, as well as the rights and duties of the parties to them, were laid out in contracts known as 'pooling and servicing agreements' . . . .").

As in *CWCapital* and *Greenwich*, the rights of Defendants are established and governed by contracts—contracts that have been sold, assigned, and transferred behind closed doors. Now, Defendants ask the Court to dismiss Kimball's attempt to discern the nature of his existing contractual relationships based on nothing more than their statement that "we have the rights we say we have." Indeed, the original Notes to which MERS was a party were sold, assigned, and

-14-

transferred, thereby clouding the rights of MERS and anyone purporting to act on behalf of or through appointment by MERS. *See, e.g.*, *In re Vargas*, 396 B.R. 511, 516-17 (Bankr. C.D. Cal. 2008); *see also Shields v. First Magnus Financial Corp.*, No. 3:10-cv-00641-RCJ-RAM, 2011 WL 1304734, at *1 (D. Nev. April 1, 2011). Defendants have refused to provide information regarding the Notes to Kimball (FAC, ¶ 24), thus forcing Kimball to bring this action to determine the rights of the parties. *See generally Nat'l Bank v. Kesler*, 216 P.3d 158, 169 (Kan. 2009) ("In attempting to circumvent the statutory registration requirement for notice, MERS creates a system in which the public has no notice of who holds the obligation on a mortgage."); *Southwest Homes.*, 301 S.W.3d at 5 ("Permitting an agent, such as MERS purports to be a step in and act without a recorded lender directing its action would wreak havoc on the notice in this state.").

Absent express authority from the owner(s) of Kimball's Notes, Defendants lack legal authority to assign the Notes and/or initiate foreclosure proceedings. Kimball has alleged well-pleaded facts establishing that Defendants lack this authority. Construing Kimball's allegations in his favor, Kimball has stated valid and viable claims against Defendants challenging their authority and their actions. Accordingly, Kimball has stated a claim for declaratory relief with respect to the rights of the parties. Defendants have failed to meet their burden under Rule 12(b)(6), and their motion to dismiss must be denied.

## III.   DEFENDANTS' MOTION MUST BE DENIED BECAUSE KIMBALL HAS STATED CLAIMS FOR RELIEF.

### A.   Kimball's FAC Adequately States a Claim for Declaratory Judgment (First Cause of Action).

"In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For a declaratory judgment action to be appropriate, the United States Supreme Court requires that "the dispute be

-15-

'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007) (holding declaratory judgment was appropriate) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41).  Likewise, declaratory relief is appropriate where it provides "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.*  (citations omitted).

Kimball has alleged a substantial, justiciable controversy between himself and Defendants:  whether Defendants own the Notes and/or has the legal authority to enforce the rights and remedies set forth in the DOTs.  In other words, Kimball has sufficiently questioned whether Defendants have the right to follow through with the trustee's sale already noticed with respect to the Subject Property.  *See* FAC, ¶¶ 1, 5, 34-38, 57, 68-71, 111-22.

The relief sought by Kimball will be conclusive in that it will establish whether Defendants have the right to take the actions they are threatening to take.  *See generally MedImmune*, 549 U.S. at 126 (2007).  The issues are ripe for resolution as Defendants have and are attempting to exercise rights and remedies held by the true owner(s) of the Notes and the associated DOTs.  Defendants' actions have and will result in harm to Kimball, including noticing defaults, threatening foreclosure, and improperly foreclosing on the Subject Property.

**B.     In the Alternative, Kimball Has Stated a Claim for Breach of the Covenant of Good Faith and Fair Dealing Against BAC (Sixth Claim For Relief).**

Kimball has alleged, in the alternative, that, if BAC acquired ownership of the Notes and authority to exercise the rights under the DOTs from Countrywide, and continues to hold the Notes and DOTs, then a valid contract exists between Kimball and BAC.  FAC, ¶ 19.  Kimball has further alleged that BAC deprived him of the fruits of the Notes and DOTs by breaching the implied covenant of good faith and fair dealing in a variety of ways, including:

-16-

a.  Failing to present evidence, upon Kimball's numerous pre-litigation written and verbal requests, including letters, regarding the unidentified and/or misrepresented current foreclosor's authority; and

b.  Failing to provide proof that it was (or is) the true holder of the Notes or that it was the authorized agent of the investors in the mortgage-backed securities for purposes of foreclosing the Notes and the related security.

Kimball has also alleged damages resulting from BAC's actions relating to the contract. *Id.* ¶ 156-57.  Specific examples include facing foreclosure, in addition to other damages, which may have been avoided had BAC not breached the implied covenant.  Kimball has alleged well-pleaded facts establishing each of the elements of a claim for breach of the implied covenant of good faith and fair dealing.  Accordingly, the Court should allow Kimball's claim for breach of the covenant of good faith and fair dealing to proceed.

**C.    Kimball's FAC Adequately States a Claim for Quiet Title Against All Defendants (Fourth Claim For Relief).**

In order to state a claim for quiet title, a party must include (1) a legal description of the property, (2) the title of the plaintiff and the basis of the title, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims." *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-CV-01140-H (BLM), 2009 WL 3214321 (S.D.Cal. Sept. 29, 2009).

It is worth clarifying that, contrary to Defendants' assertions, Kimball is not bringing claims based on "show me the note" or "securitization discharged my note" theories.  These are not the facts alleged or the theories pleaded by Kimball, and the Court should not be dissuaded by Defendants' mischaracterization of Kimball' claims.

As described above, Kimball recognizes that the security (the DOTs) follows the debt (the Notes).  Kimball alleges that Defendants do not own the Notes and thus cannot exercise the rights and remedies secured by the associated DOTs—such as acceleration of the Notes and foreclosure

-17-

1    pursuant to the DOTs.  Accordingly, Defendants' arguments with respect to "show me the note"

2    are not at issue, and the cases cited by Defendants with respect to this theory are inapposite.

3           Assuming Kimball's allegations are true, Defendants have no authority to exercise the

4    rights under the DOTs.  Notwithstanding their lack of authority, Defendants have initiated

5    foreclosure proceedings against the Subject Property.  As a result, Kimball is entitled to redress

6    from the Court, including having the Court quiet title in Kimball as against Defendants.

7           As additional support for their assertion that Kimball's quiet title claim should be

8    dismissed, Defendants point to Kimball's failure to properly allege tender.  *See* Defs.' Memo., at

9    4-5.  However, as discussed above, the tender rule does not apply in this case, and failure to

10   comply with the tender rule does not preclude Kimball from asserting a claim for quiet title.

11   Therefore, the Court should allow Kimball's quiet title claim to proceed.[7]

12   **IV.    CONCLUSION**

13          Concurring with the majority in *Ibanez*, Justice Cordy, joined by Justice Botsford, felt

14   compelled to add that "what is surprising about these cases is . . . the utter carelessness with

15   which the Defendant banks documented the titles to his assets.  There is no dispute that the

16   mortgagors of the properties in question had defaulted on his obligations . . . .  Before

17   commencing an action, however, the holder of an assigned mortgage needs to take care to ensure

18   that his legal paperwork is in order."  *Ibanez*, 2011 WL 38071, at *12 (Cordy, J., concurring).

19          Kimball has met his burden under Rule 8 of the Federal Rules of Civil Procedure by

20   pleading facts sufficient to state claims entitling him to relief.  Considering the requirements for

21   overcoming a Rule 12(b)(6) motion, Kimball has alleged facts that, if proven, could establish the

22   claims asserted.  Since Kimball's well-pleaded facts are assumed to be true, Defendants' motion

23   to dismiss should be denied.

24

25   _____

26   [7] It is worth noting that Kimball is seeking to quiet title with respect to the named defendants and
     not necessarily with respect to the true owner(s) of the Notes and the associated rights and
27   remedies tied to the DOTs.

                                                    -18-
28

DATED:  May 26, 2011

CORVUS LAW GROUP, LLC


/S/ Marcus R. Mumford
MARCUS R. MUMFORD
mrm@corvuslaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2011, I served the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the following via a Notice of Electronic Filing ("NEF") from the Court's CM/ECF system:

      David S. Reidy (dreidy@reedsmith.com)
      Matthew J. Brady (mbrady@reedsmith.com)
      REED SMITH LLP
      101 Second Street, Suite 1800
      San Francisco, CA 94105-3659
      Phone:  415.543.8700
      Fax:  415.391.8269

*Attorneys for Defendants Countrywide Home Loans, Inc., BAC Home Loan Servicing, LP, and Mortgage Electronic Registration Systems, Inc.*

                                    /S/ Marcus R. Mumford_____